IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 1:16-cv-02327-RPM

STEVEN CHRISTOPHER TALLEY,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER;
DETECTIVE JEFFREY HART;
SERGEANT ANDREW HOWARD;
SERGEANT MARCO MARTINEZ;
OFFICER JOHN RUDDY; and
OFFICER JAMES BRADLEY,

    Defendants.

---

ORDERS ON PARTIAL MOTION TO DISMISS

---

Plaintiff Steven Christopher Talley was arrested on September 15, 2014 pursuant to a warrant issued by a Denver District Court judge based on an affidavit and application submitted by Denver Detective Jeffrey Hart, which asserted probable cause that Mr. Talley robbed a U.S. Bank on East Colfax Avenue on May 14, 2014 and another U.S. Bank on South Colorado Boulevard on September 5, 2014. The Denver District Attorney charged Mr. Talley with those crimes and an assault on Officer Michael Ahrens, who had been working as a security guard at the East Colfax Branch at the time of the May robbery. All charges were dismissed by the prosecuting attorney on November 13, 2014 after defense counsel provided evidence that Mr. Talley was at work at an insurance company at the time of the May robbery.

1

Mr. Talley was arrested a second time on December 10, 2015 pursuant to a warrant issued based on an affidavit and application submitted by Denver Detective Eric Denke at the direction of Detective Hart, which asserted probable cause that Mr. Talley committed the September 2014 robbery. Mr. Talley was released on a personal recognizance bond at a preliminary hearing on January 11, 2016 as a result of testimony from the bank teller, Bonita Shipp, that he was not the robber, and another witness testifying that he was at a church food bank at the time of the robbery. The charges were dismissed by the prosecuting attorney on April 21, 2016.

Mr. Talley filed this civil rights action on September 14, 2016. Following a stay ordered by a magistrate judge to permit some informal discovery, a Second Amended Complaint was filed on February 23, 2017 [Doc. 42]. Five claims for relief are alleged, all brought under Title 42, United States Code, Section 1983:

(1) false arrest/false imprisonment in violation of the Fourth and Fourteenth Amendments, asserted against Defendants Hart, Howard, Martinez, Ruddy, and Bradley;

(2) use of excessive force in violation of the Fourth and Fourteenth Amendments, asserted against Defendants Martinez, Ruddy, and Bradley;

(3) retaliation in violation of the First Amendment, asserted against Defendants Hart and Howard;

(4) malicious prosecution in violation of the Fourth and Fourteenth Amendments, asserted against Defendants Hart and Howard; and

(5) use of excessive force in violation of the Fourth and Fourteenth Amendments, asserted against Defendant City and County of Denver pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).

Defendants Martinez, Ruddy, and Bradley filed an answer to Plaintiff's Second Claim for Relief alleging use of excessive force [Doc. 46]. All Defendants filed a partial motion to dismiss the other claims pursuant to Federal Rule of Civil Procedure 12(b)(6) [Doc. 45]. That motion has been fully briefed, and oral argument was heard.

In his response to Defendants' partial motion to dismiss, Mr. Talley agreed to dismiss Defendants Martinez, Ruddy, and Bradley from his First Claim for Relief alleging false arrest/false imprisonment [Doc. 51 at 1 & n.1]. At oral argument Plaintiff's counsel agreed to dismiss Defendant Howard from all claims, without prejudice. Plaintiff's counsel also agreed that the Fourth Amendment (not the Fourteenth) governs Plaintiff's false arrest/false imprisonment, excessive force, and malicious prosecution claims.

The claims challenged by Defendants' motion to dismiss are based on Plaintiff's assertion that the arrest warrants were invalid because the affidavits authored by Defendant Hart were based on inadequate investigation and contained material misstatements and omissions made knowingly or recklessly in violation of the Fourth Amendment. *See Franks v. Delaware*, 438 U.S. 154 (1978).

**Alleged Facts**

The May 14, 2014 robbery at 11:57 a.m. was recorded on a surveillance camera. Denver police officer Michael Ahrens was present as an employed security guard. Officer Ahrens fell chasing the robber and sustained knee abrasions. A swab believed to contain the robber's DNA was taken from the area where Officer Ahrens had been in contact with the robber during the chase, and a fingerprint believed to belong to the robber was lifted from the bank. Officer Ahrens described the robber as a white male between 6′0″ and 6′2″ tall and approximately 200 pounds. The bank teller, Miurjana Dengubie, described the robber as a white male between 5′10″ and 6′2″ tall and approximately 175 to 190 pounds.

Defendants Hart and Howard were assigned to investigate the robbery. Detective Hart used video surveillance photographs of the suspect taken during the robbery to prepare "Law Enforcement" and "Crime Stoppers" bulletins that were distributed to local law enforcement agencies and news stations. Between May and September 2014, the police had no suspects for the May 2014 robbery.

The September 5, 2014 robbery was also recorded on a surveillance camera. Defendants Hart and Howard were assigned to investigate the September robbery. Detective Hart again used video surveillance photographs of the suspect taken during the robbery to prepare "Law Enforcement" and "Crime Stoppers" bulletins that were distributed to local law enforcement agencies and news stations.

On September 11, 2014, Metro Denver Crime Stoppers received a tip identifying the suspect of the September robbery as "Steve Galley, 12/23/1970," currently living in a transitional housing program at 2689 South Jackson Street in Denver. Detective Hart conducted a computer search and found a Steven Talley with that birthdate residing at that

address. Detective Hart then retrieved a DMV photograph of Mr. Talley as well as a mug shot of Mr. Talley from the Denver Police mug shot system, which apparently was in the system from previous arrests for driving under the influence of alcohol. Detective Hart compared the DMV photograph with the surveillance photographs from the September robbery and determined that there were similarities in the subjects' appearance.

On September 14, 2014, Metro Denver Crime Stoppers received a tip identifying the suspect of the September robbery as "Steven Talley, 12/23/1970." The tipster indicated that Mr. Talley has the same posture as the suspect depicted in the surveillance photographs.

Following receipt of these anonymous tips, Detective Hart generated a six-photograph array in which Mr. Talley's DMV photograph was placed in the number three position. Plaintiff contends that the five "filler" photographs in the array bear only slight physical resemblance to him. Detective Hart then presented the array to Bonita Shipp, the bank teller from the September robbery. In his presentation of the photograph array to Ms. Shipp, Detective Hart violated identification procedures and protocols in two important ways: (1) Detective Hart both created the array and administered the identification procedure; and (2) Detective Hart told Ms. Shipp that Mr. Talley was the suspect and pointed to his photograph in the array. Ms. Shipp then indicated that she was 85% sure the person in photograph number three was the robber. Ms. Shipp described the robber as a white male approximately 6 0″ tall with a thin to medium build.

Following the identification by Ms. Shipp, Detective Hart spoke with Amber Talley, Mr. Talley's estranged ex-wife. Detective Hart advised Ms. Talley of the reason for his visit and then showed her the surveillance photographs of the suspect from the September robbery. Ms. Talley identified the suspect as her ex-husband Steven Talley. Ms. Talley

5

indicated that she recognized Mr. Talley's facial features, facial profile, and clothing in the September surveillance photographs. Detective Hart then showed Ms. Talley the surveillance photographs of the suspect from the May robbery, and Ms. Talley again identified the suspect as her ex-husband Steven Talley. Ms. Talley indicated that she recognized Mr. Talley's facial profile, facial outline, body profile, and shoulder outline in the May surveillance photographs.

Detective Hart applied for a warrant to arrest Mr. Talley, which was issued on September 15, 2014. A search warrant was also issued that day. The arrest was made by officers Martinez, Ruddy, and Bradley at approximately 8:30 p.m. on September 15, 2014. The manner in which the arrest was made is the basis of Mr. Talley's excessive force claim against those three Defendants.

Following Mr. Talley's arrest, Sergeant Howard went to Mr. Talley's house to assist with execution of the search warrant. While on that scene, Sergeant Howard spoke with Mr. Talley's roommate, Anthony Yellowhorse, showing him the surveillance photographs of the suspect from the September robbery. Mr. Yellowhorse identified the suspect as Mr. Talley, and indicated that he recognized the "CU Buffs" hat the suspect was wearing as Mr. Talley's. Mr. Yellowhorse also said that the last time he had seen Mr. Talley wearing that hat was on May 14, 2014.

Following Mr. Talley's arrest, Detective Hart and Sergeant Howard interviewed numerous employees and witnesses from both the May and September robberies, none of whom could identify or accurately describe Mr. Talley. On September 17, 2017, Detective Eric Denke, who is not a defendant in this case, presented the six-photograph array prepared by Detective Hart to Ms. Dengubie, the bank teller from the May robbery. She was unable to

identify Mr. Talley. Ms. Dengubie instead identified one of the "filler" photographs as the robber. Detective Denke also presented the photograph array to Officer Ahrens, the security guard who was injured during the May robbery. Officer Ahrens was likewise unable to identify Mr. Talley, and also selected one of the "filler" photographs as the robber.

On September 18, 2014, Detective Hart presented the evidence to the Denver District Attorney's intake office, and on September 19, 2014, Mr. Talley was formally charged with commission of both the May and September robberies and assault on Officer Ahrens.

On November 5, 2014, Mr. Talley's lawyer provided the District Attorney's office with alibi evidence for the May robbery, which included Mr. Talley's time sheet and recorded phone calls showing that he was at work at Transamerica Capital at the time of the robbery. Detective Hart contacted Transamerica and verified the authenticity of the records, and then contacted the District Attorney's office regarding the information. On November 13, 2014, approximately two months after Mr. Talley was arrested, all claims against him were dismissed, and he was released from jail.

Upon his release, Mr. Talley told Detective Hart that he would report Detective Hart to the Internal Affairs Bureau ("IAB") for violating identification protocols when showing the photograph array to Ms. Shipp. Soon after, Detective Hart and Sergeant Howard threatened Mr. Talley, warning that they would bring future charges against him. Detective Hart and Sergeant Howard reopened the investigation of Mr. Talley with respect to the September 2014 robbery, which Plaintiff claims was in retaliation for his complaint.

On February 23, 2015, Detective Hart had a second interview with Mr. Yellowhorse. Mr. Yellowhorse told Detective Hart that shortly after September 5, 2014, he was paying his rent when the front desk clerk asked him to look at the "Crime Stoppers" bulletin from the

7

September 2014 robbery. Mr. Yellowhorse told Detective Hart that he immediately recognized the pictured suspect as his roommate, Mr. Talley. Mr. Yellowhorse stated that he recognized Mr. Talley's facial features, the way he slouched, and his clothing in the surveillance photographs. Mr. Yellowhorse further stated that about a week and a half later, he noticed Mr. Talley wearing the same jacket and hat as in the surveillance photographs, and that at that time there was "no doubt in his mind" the pictured suspect was Mr. Talley.

On March 20, 2015, Mr. Talley filed a written complaint with IAB regarding Detective Hart's violation of identification protocols when showing the photograph array to Ms. Shipp. On April 16, 2015, IAB found that Detective Hart had violated department procedures in his presentation of photograph array to Ms. Shipp.

That same day, April 16, 2015, Detective Hart requested that the FBI's Forensic, Audio, and Image Analysis Unit ("FAVIAU") conduct image enhancement and a comparison of the September 2014 robbery surveillance photographs to Mr. Talley's database photographs. The FAVIAU utilizes human comparison, rather than computer generated facial recognition comparison. Human comparisons of pictures are statistically less reliable than facial recognition software.

On May 27, 2015, Detective Hart received the results of the FAVIAU analysis, which indicated that Mr. Talley and the individual depicted in the September 2014 surveillance photographs "share multiple corresponding characteristics such as the overall shape of the head, jaw line, chin, nose, lips and mouth, moles/marks on the face and neck and specific features in the left ear." [Doc. 45-4 at 2.] The FAVIAU report concluded that "[t]he questioned individual depicted in the [September 2014 surveillance photographs] appears to be [Mr. Talley]." [*Id.*] Plaintiff contends that Mr. Talley's database photographs show two

8

distinctive moles on his right cheek that are not present on the suspect depicted in the September 2014 surveillance photographs.

On June 10, 2015, Detective Hart and Sergeant Howard met with representatives from the Denver District Attorney's office, who requested FBI FAVIAU analysis of the surveillance photographs from the May 2014 robbery. The second FAVIAU report concluded that the individual depicted in the May 2014 surveillance photographs was not Mr. Talley.

On July 28, 2015, pursuant to a search warrant, Detective Hart reviewed Mr. Talley's cell phone records. The records revealed, *inter alia*, an incoming missed call that Mr. Talley had received at 9:22 a.m. while at the food bank on the morning of the September 2014 robbery, and an outgoing return call Mr. Talley made at 9:46 a.m. after he arrived home. Both of these calls "pinged" off of a cell tower located near the robbed U.S. Bank. That cell tower is also located near the food bank and Mr. Talley's residence.

At Detective Hart's direction, an application for a warrant to arrest Mr. Talley for the September robbery was submitted by Detective Denke. A warrant issued on December 9, 2015, and Mr. Talley was arrested on December 10, 2015 and detained in the Denver County Jail.

On January 11, 2016, the preliminary hearing was held, at which the exculpatory evidence was presented. After the hearing, the Denver District Attorney's office requested that the FBI conduct a height analysis of the individual depicted in the surveillance photographs from the September 2014 robbery. The FBI analysis revealed that the individual depicted in the surveillance photographs was 6 ½″ tall; Mr. Talley is 6 3½″ tall. On April 21, 2016, all charges against Mr. Talley were dismissed.

**Analysis**

Probable cause for arresting and charging Mr. Talley with the May robbery could only be based on the assumption that both robberies were committed by the same man, because there was no evidence connecting Mr. Talley to that crime except the surveillance photo identification made by his ex-wife. Nothing came from publication of the May surveillance photos in Law Enforcement and Crime Stoppers bulletins. The descriptions of the robber provided by Ms. Dengubie and Officer Ahrens were generic. However, there can be no recovery for the lack of sufficient probable cause as to the May robbery because the first arrest and charges also included the September crime. On its face, the first warrant affidavit set forth sufficient probable cause with respect to the September robbery.

Plaintiff claims that no weight can be given to the Crime Stoppers tips because Detective Hart made no attempt to verify the information given or the credibility of the tipsters. Detective Hart used those tips to connect the name, date of birth, and current address in a computer search, locating the DMV driver's license photograph and the photo in the Denver Police mug shot system, and seeing similarities with the surveillance photographs from the September robbery. The law enforcement agencies' computer data revealed the existence of an "estranged" ex-wife, Amber Talley, and her address. She identified Mr. Talley from surveillance photographs from both robberies based on facial features, facial profile, and the clothes the robber was wearing in the September photographs and based on facial profile and outline and body profile and shoulder outline of the robber in the May photographs.

There was a material omission from the warrant affidavit in the failure to disclose that Ms. Shipp's identification resulted from the use of an unduly suggestive photo array—saying

Mr. Talley was the suspect and pointing to his picture. It is plausible to believe that the elimination of the Shipp identification would have caused the issuing judge to deny the application for the arrest warrant and search warrant on September 15, 2014.

The application for the second arrest warrant, which is limited to the September robbery, repeats the Shipp identification and that of Amber Talley, including her statement that the surveillance photos from the May robbery also depicted her former husband. Detective Hart acknowledged Mr. Talley's alibi for the May robbery and the dismissal of all prior charges, but made this statement: "The information provided by Talley's public defender did not relate to the 09/05/2014 bank robbery nor did it provide any type of information in relation to Talley's location during the 09/05/2014 robbery or any type of alibi." [Doc. 45-5 at 2.]

The additional information provided in this second warrant application resulted from renewing the investigation in early 2015, including statements made by Mr. Yellowhorse that he recognized his roommate Mr. Talley when he saw the Crime Stoppers bulletin on a computer when he was paying his rent at the homeless shelter office a short time after the September robbery. Detective Hart further described a search based on a cell phone number left by Mr. Talley when he was booked into the jail at his first arrest in 2014. That search showed calls to and from that phone near the time and location of the September robbery at the Colorado Boulevard bank and Mr. Talley's residence.

Detective Hart also cited the results of an analysis conducted by the FBI lab that the person shown in the September surveillance photographs appeared to be the same as the known photographs of Mr. Talley. Detective Hart did not disclose that the FBI lab reports

11

also stated that this was not the person shown in the May surveillance photographs from the Colfax bank robbery.

Detective Hart did not explicitly say that his initial operating assumption that the same person robbed both banks was wrong, and did not point out the weakness in Amber Talley's statements that Mr. Talley was pictured in the surveillance photographs from both robberies.

The Constitutional violation charged in this case is that Detective Hart used false and misleading information and omitted material information knowingly or recklessly in a false arrest, false imprisonment, and malicious prosecution of Mr. Talley. Mr. Talley may not proceed to litigate his claims against Detective Hart because this Court must grant Detective Hart qualified immunity. Plaintiff has not shown that Detective Hart violated any clearly established law of which a reasonable police officer would have known at the time of the two arrest warrants.

The United States Supreme Court, *per curiam*, vacated a Tenth Circuit Court of Appeals decision denying summary judgment in a police shooting case by an opinion that strongly emphasized that qualified immunity for government officials is important to "society as a whole," and included the following paragraph:

> Today, it is again necessary to reiterate the longstanding principle that "clearly established law" should not be defined "at a high level of generality." As this Court explained decades ago, the clearly established law must be "particularized" to the facts of the case. Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights."

*White v. Pauly*, 137 S. Ct. 548, 552 (2017) (citations omitted).

The nearest case to this one is *Wilkins v. DeReyes*, 528 F.3d 790 (10th Cir. 2008). There the defendant officer fabricated evidence in a murder investigation by coercing false statements from fellow gang members. That unlawful police conduct is different from the essential claim here that Detective Hart misled the judges by omitting exculpatory information from his probable cause affidavits.

Another case comparable to this one is *Sperry v. Maes*, 592 F. App'x 688 (10th Cir. 2014). While that opinion was not published and is not legal precedent under the Tenth Circuit's rules, it is instructive because the claim was that Officer Maes made material misstatements in and omissions from his arrest warrant affidavit concerning the suspect's cognitive capacity. The appellate court affirmed that there was sufficient probable cause and said that "a police officer who . . . arrest[s] a suspect is not required to further investigate all probable defenses or claims of innocence." 592 F. App'x at 696. In this case, Detective Hart could reasonably have believed the identifications of Mr. Talley were valid, even though the primary identifier was reacting to his suggestion.

Similarly, Plaintiff has not shown that proceeding with further investigation after dismissal of the original charges and initiating a second arrest based on additional information, if the motivation was to retaliate because Mr. Talley's complaint had resulted in an IAB finding of a violation of policy, violated any clearly established First Amendment law.

Given that there is qualified immunity under the second prong of the analysis, it is not necessary to determine whether the arrest warrants were issued without probable cause. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

**Orders**

Upon the foregoing, it is ORDERED that the Denver Defendants' Partial Motion to Dismiss [Doc. 45] is GRANTED IN PART and DENIED IN PART as follows:

The motion is granted dismissing Plaintiff's First Claim for Relief against Defendants Martinez, Ruddy, and Bradley. That claim is dismissed as to them.

The motion is granted with respect to all of Plaintiff's claims against Defendant Howard, which are dismissed without prejudice.

The motion is granted with respect to all of Plaintiff's claims against Defendant Hart, which are dismissed on the basis of qualified immunity.

The motion is denied with respect to Plaintiff's *Monell* claim against Defendant City and County of Denver for the reasons stated on the record at the October 27, 2017 hearing.

DATED: November 6, 2017    BY THE COURT:

s/Richard P. Matsch

Richard P. Matsch, Senior District Judge