IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02327-JLK

STEVEN CHRISTOPHER TALLEY,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER;
SERGEANT MARCO MARTINEZ;
OFFICER JOHN RUDDY; and
OFFICER JAMES BRADLEY,

    Defendants.

_____

**ORDER GRANTING DEFENDANTS'
MOTION TO BIFURCATE TRIAL (ECF NO. 118)**
_____

Kane, J.

This matter is before me on the Motion to Bifurcate Trial (ECF No. 118) filed by Defendants, the City and County of Denver ("the City") and Denver Police Officers John Ruddy, James Bradley, and Marco Martinez ("Defendant Officers"). Plaintiff Steven Christopher Talley's two remaining claims in this case are brought under 42 U.S.C. § 1983. The first asserts that Defendant Officers used excessive force in arresting him in violation of his Fourth Amendment rights, and the second, alleges the City caused that violation of his constitutional rights by failing to properly train and supervise its officers. Defendants request that the impending trial be bifurcated such that Mr. Talley's claim against Defendant Officers is tried first and, if Mr. Talley succeeds in establishing that his constitutional rights were violated, then a

second trial on his claim against the City will follow. I find that bifurcation will ensure that all parties receive a fair trial, and so I grant Defendant's Motion.

Under Federal Rule of Civil Procedure 42(b), courts may order a separate trial of one or more issues or claims "[f]or convenience, to avoid prejudice, or to expedite and economize." "While separation of issues for trial is not to be routinely ordered, it is important that it be encouraged where experience has demonstrated its worth." Fed. R. Civ. P. 42 advisory committee's note to 1966 amendment. A trial court "has considerable discretion in determining how a trial is to be conducted," including in bifurcating issues or claims. *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 964 (10th Cir. 1993).

> It is well-established by a wealth of case law that ultimately the question of whether to conduct separate trials under Rule 42(b) should be, and is, a matter left to the sound discretion of the trial court on the basis of the circumstances of the litigation before it. The district judge must weigh a variety of facts, such as whether one trial or separate trials best will serve the convenience of the parties and the court, avoid prejudice, and minimize expense and delay. The major consideration, of course, must be which procedure is more likely to result in a just and expeditious final disposition of the litigation.

9A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2388 (3d ed. 2020).

To recover on his Fourth Amendment claim against Defendant Officers, Mr. Talley must demonstrate that the Officers used force that was objectively unreasonable when they arrested him. *See Graham v. Connor*, 490 U.S. 386, 396-97 (1989). Mr. Talley's municipal liability claim is based on two theories: (1) that the City failed to properly train its officers on the use of flashbangs and (2) that it failed to supervise, investigate, and discipline its officers with respect to the use of excessive force. To succeed on his failure-to-train theory of municipal liability, Mr. Talley must establish:

1) that Defendant Officers violated his constitutional rights with their use of excessive force;

2

2) that the City's training on flashbangs was in fact inadequate;

3) that the use of the flashbangs arose under circumstances that constitute a usual and recurring situation with which police officers must deal;

4) that the inadequate training on flashbangs demonstrates a deliberate indifference on the part of the City; and

5) that there is a direct causal link between the constitutional deprivation and the inadequate training.

*See Brown v. Gray*, 227 F.3d 1278, 1286 (10th Cir. 2000). For his failure-to-properly-supervise theory, Mr. Talley must prove similar elements. *See Ortega v. City and County of Denver*, 944 F.Supp.2d 1033, 1039-40 (D. Colo. 2013).

Consequently, the common question for Mr. Talley's two claims is whether Defendant Officers violated his Fourth Amendment rights. Mr. Talley implies that he might be able to recover on his municipal liability claim even if his claim against Defendant Officers is unsuccessful. This is true in one scenario only: if the jury finds that Defendant Officers violated Mr. Talley's Fourth Amendment rights, but it is determined that the law was not clearly established. Then, Mr. Talley's excessive force claim would fail based on qualified immunity, but his municipal liability claim would still be viable. Mr. Talley proposes another option, which is not a possibility in this case. Citing to *Estate of Alderman v. City of Bakersfield*, No. 1:16-cv-00994-DAD-JLT, 2018 WL 4156740 (E.D. Cal. Aug. 28, 2018), Mr. Talley states: "In a case regarding an officer-involved shooting, the court denied bifurcation of the *Monell* claim because it concerned misconduct during the investigation of the shooting, meaning the plaintiff's *Monell* claim could succeed even if the individual officer defendants were not found liable." To the extent Mr. Talley is suggesting that his municipal liability claim could be based on a violation of his constitutional rights other than Defendant Officers' use of force, he has missed the boat. Not only is his claim not pled in that fashion, but he did not raise any related arguments during

3

briefing on the City's Motion for Summary Judgment. I have already ruled on the municipal liability theories advanced by Mr. Talley, and they require a showing that Defendant Officers used unreasonable force in violation of the Fourth Amendment. Thus, the constitutional-violation issue is common to both claims.

Defendants argue that Mr. Talley's claim against Defendant Officers should be tried first in order to promote convenience and economy and to avoid prejudice to the Officers. They reason that, if Mr. Talley is unable to establish that his constitutional rights were violated in the first trial, then the need for the second trial and the presentation of extensive evidence specific to the municipal liability claim would be obviated. While efficiency and economy are worthwhile goals, my priority is that all parties receive a fair trial. As such, I find Defendants arguments regarding prejudice to be the most salient.

Because Mr. Talley's claims involve two standards, he must present distinct evidence for each claim. In order to prove the elements of his municipal liability claim, he will undoubtedly present evidence that would be prejudicial for Defendant Officers. I anticipate this evidence will include accounts of past uses of excessive force by Denver Police Officers and detail the City's failure to properly investigate and discipline those instances. This evidence would be highly prejudicial to Defendant Officers and not relevant to whether they violated Mr. Talley's rights in this case. In the parties' Proposed Pretrial Order, Mr. Talley listed four individuals as witness who he will call to testify regarding Defendant Officers alleged use of excessive force during his arrest. Proposed Pretrial Order at 4-5, ECF No. 122. He named another 31 individuals as witnesses who he will call to testify regarding their past experiences with the City. *Id.* at 5-11. Mr. Talley submitted affidavits and deposition testimony from the witnesses in the latter group. Their stories of being unreasonably targeted, assaulted, and disrespected by Denver Police

Officers are sure to provoke unfair prejudice against Defendant Officers. *See, e.g.*, Witness Affidavits, ECF No. 93-13 at 15 (describing being body slammed by a Denver Police Officer without cause); *id.* at 18 (reporting that an investigator tried to intimidate him into not filing an internal affairs report); *id.* at 30-31 (recounting a Denver Police Officer's unjustified attack on a police officer from another town). Bifurcation of the trial is, therefore, necessitated. *See* Fed. Prac. & Proc. § 2388 ("A separate trial . . . may be ordered to avoid prejudice, as when evidence admissible only on a certain issue may prejudice a party in the minds of the jury on other issues . . . .").

Mr. Talley asserts that any prejudice to Defendant Officers can be ameliorated through proper jury instructions. I disagree. Although jurors are generally assumed to follow the court's instructions, a limiting instruction in this case would be too convoluted and would cause frequent disruptions in the trial.

Mr. Talley also argues that he would suffer great prejudice if the trial were bifurcated, because he would have to expend additional resources, be forced to wait even longer for resolution of the litigation, and be prevented from holding the City accountable. To support his contentions, Mr. Talley references cases in which bifurcation was considered at the outset of discovery.[1] For the reasons set forth in those cases, I likely would not have granted bifurcation at any earlier point in time. But discovery has been completed in this case, and Mr. Talley has had his opportunity to "discover, and bring to light, evidence of governmental abuses." Bifurcation Resp. at 13, ECF No. 121 (internal quotation marks and citation omitted). Moreover, there will be minimal delay from bifurcating the trial. The parties will prepare for both trials simultaneously, and the trials will be set in succession. Bifurcation of the trial will not hinder Mr.

---

[1]Mr. Talley even states: "Because bifurcation of discovery and trial would substantially prejudice Plaintiff, Defendant's [sic] motion must be denied." Bifurcation Resp. at 14.

5

Talley's ability to hold the City liable in any way. The same standards will apply, and he will be free to present the evidence establishing the City's culpability. Thus, even considering Mr. Talley's objections, I find the interests of justice demand that two trials be held—the first on the question of whether Mr. Talley's constitutional rights were violated and the second on the remainder of his municipal liability claim.

This conclusion—I imagine and the parties' briefs indicate—will trigger additional motions *in limine* for both trials. In an effort to further explain my reasoning for bifurcation, I continue on to address the evidentiary arguments raised by the parties in their briefs and state my inclinations. I leave open the possibility, however, that my specific evidentiary rulings will vary based on the motions that are filed.

Notably, Mr. Talley does not argue that evidence of previous instances of excessive force by other officers would not be prejudicial to Defendant Officers. He contends instead that he should not be deprived of his right "to place before the jury the circumstances and atmosphere of the entire cause of action." Bifurcation Resp. at 12 (internal quotation marks and citation omitted). To be sure, some background information is necessary. But I do not see how an uninvolved officer's unwarranted attack on an individual years before would be relevant for determining whether Defendant Officers use of force in this case was objectively reasonable. Mr. Talley also asserts that, he should be allowed to "show[] the jury that these Defendants claim to have almost universally never seen a fellow officer commit excessive force in all the decades they have witnessed force used on arrestees." Bifurcation Resp. at 10. Presumably, he means that he should be permitted to demonstrate that Defendant Officers' assertions of never having seen excessive force are incredible since many incidents involving excessive force have occurred in the Denver Police Department. But Mr. Talley would have to connect the dots between

6

Defendant Officers and the prior incidents, and doing so would involve the types of mini-trials that would distract and confuse the jury.

Additionally, Mr. Talley maintains that, if Defendant Officers are able to point to the favorable determination in the internal affairs investigation on his excessive force complaint, he "should be permitted to show the jury that this type of 'investigation' is part of Denver's *modus operandi* . . . and [is] used to protect their officers rather than getting to the truth of what actually occurred." *Id.* at 7-8. The officers involved in the internal affairs investigation should be allowed to testify regarding their review of information and the conclusion they reached. However, the fact that an investigation took place and the outcome of that investigation is not relevant for determining whether Mr. Talley was subjected to excessive force. Similarly, Mr. Talley contends that, since Defendant Officers are likely to defend their actions by claiming that they were following the custom, practice, or policy of the City, "all of the evidence" regarding the City's training and policies will be brought before the jury on his claim against Defendant Officers. Bifurcation Resp. at 8 (internal quotation marks and citation omitted). There is no reason why evidence of the City's internal investigation and discipline policies would be relevant for the jury's determination as to whether Defendant Officers' use of force was objectively reasonable.

Accordingly, Defendants have demonstrated that, to avoid unfair prejudice to Defendant Officers, it is necessary to bifurcate the trial in this case. Defendants' Motion (ECF No. 118) is, therefore, GRANTED. The parties are DIRECTED to file two separate Proposed Pretrial Orders—one for the constitutional violation trial and one for the municipal liability trial—on or before February 18, 2021. The parties are also to jointly submit proposed jury instructions for each trial on or before April 1, 2021. Motions *in Limine*, including motions objecting to expert witness testimony, shall be filed on or before February 25, 2021. Responses to those motions

shall be filed on or before March 18, 2021, and any replies shall be filed on or before April 1, 2021. The parties' witness and exhibit lists are due May 19, 2021. The constitutional violation trial will begin Monday, June 7, 2021, and is tentatively set for two weeks. The Final Trial Preparation Conference for that trial is set for Wednesday, June 2, 2021. Ideally, the municipal liability trial will be set to begin on Monday, June 28, 2021, with the Final Trial Preparation Conference taking place the week of June 21, 2021. The parties are DIRECTED to call chambers JOINTLY at (303) 844-6118 on or before February 4, 2021, to confirm these dates.

DATED this 29th day of January, 2021.

_____
JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE